Electronically Filed
Supreme Court
SCWC-14-0001060
21-APR-2017
08:13 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

JOHN G. SCALERA,
Petitioner/Defendant-Appellant,

SCWC-14-0001060

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001060; CASE NO. 1DTA-13-02681)

APRIL 21, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

This case concerns the right of an arrested person under statutory law to communicate and consult with counsel. The defendant in this case, following his arrest for operating a vehicle under the influence of an intoxicant and prior to deciding whether to submit to alcohol concentration testing, was affirmatively advised that he was not entitled to an attorney before submitting to any tests to determine his breath or blood

alcohol concentration.  We hold that this advisory is inconsistent with Hawaii's statutory right to access counsel, but we conclude under the facts of this case that the defendant's subsequent refusal to submit to testing is not subject to suppression.

## I.   BACKGROUND

### A.   June 28, 2013 Arrest

On June 28, 2013, at about 11:00 p.m., John Scalera was stopped while driving westbound on Kailua Road by Honolulu Police Department (HPD) Officers Lordy Cullen and Michael Krekel for weaving back and forth over the roadway's solid and broken white lines.  Officer Cullen informed Scalera why he had stopped him, and Scalera responded that he had consumed "a few drinks with his friends," was travelling home, and was "good to drive." Officer Cullen detected a strong odor of alcohol emitting from Scalera's breath and noticed that Scalera was "flushed red in his face."  Officer Krekel administered the standardized field sobriety test to Scalera.  Based on the test results, Scalera was arrested and transported to the Kailua Police Station.

After being booked by the desk sergeant at the station, Officer Krekel read to Scalera HPD Form 396K, titled "Use of Intoxicants While Operating a Vehicle Implied Consent

for Testing" (implied consent form). The top half of the implied consent form stated as follows:

> Pursuant to chapter 291E, Hawaii Revised Statutes (HRS), Use of Intoxicants While Operating a Vehicle, you are being informed of the following:
>
> 1. ____ Any person who operates a vehicle upon a public way, street, road, or highway or on or in the waters of the State shall be deemed to have given consent to a test or tests for the purpose of determining alcohol concentration or drug content of the persons breath, blood, or urine as applicable.
>
> 2. ____ <u>You are not entitled to an attorney before you submit to any tests [sic] or tests to determine your alcohol and/or drug content.</u>
>
> 3. ____ You may refuse to submit to a breath or blood test, or both for the purpose of determining alcohol concentration and/or blood or urine test, or both for the purpose of determining drug content, none shall be given, except as provided in section 291E-21. However, if you refuse to submit to a breath, blood, or urine test, you shall be subject to up to thirty days imprisonment and/or fine up to $1,000 or the sanctions of 291E-65, if applicable. In addition, you shall also be subject to the procedures and sanctions under chapter 291E, part III.

(Emphasis added). Scalera initialed each of the three paragraphs located in the top portion of the implied consent form.

The bottom half of the implied consent form set forth the following types of tests to which a defendant could consent:

> <u>ALCOHOL CONCENTRATION</u>
>
> ____ AGREED TO TAKE A BREATH TEST AND REFUSED THE URINE TEST
>
> ____ AGREED TO TAKE A BLOOD TEST AND REFUSED THE BREATH TEST
>
> ____ AGREED TO TAKE BOTH A BREATH TEST AND A BLOOD TEST
>
> ____ REFUSED TO TAKE EITHER A BREATH TEST OR A BLOOD TEST

3

> . . . .
>
> I, THE ARRESTEE/RESPONDENT, ACKNOWLEDGE THAT I MADE THE CHOICE(S) INDICATED ABOVE AND WAS INFORMED OF THE INFORMATION IN THIS REPORT.

After Officer Krekel read aloud the four testing options, Scalera stated that he "wasn't going to take anything," which Officer Krekel understood to "count[] as a refusal." On the form next to these options, Officer Krekel wrote "refused to initial." At this point, Officer Krekel repeated to Scalera that his options were to (1) take a breath test and refuse the blood test, (2) take a blood test and refuse the breath test, (3) take both the breath test and blood test, or (4) refuse both the breath test and the blood test. Upon asking Scalera if he understood, Scalera again verbally responded, "I'm not taking anything."

Officer Krekel then read to Scalera HPD Form 396B-1, titled "Sanctions for Use of Intoxicants While Operating a Vehicle & Implied Consent for Testing" (sanctions form).[1] After

---

[1] The sanctions form states, in relevant part, as follows:

I, <u>Michael Krekel</u>, a police officer, swear that the following statements were read to the arrestee:

Pursuant to chapter 291E, Hawaii Revised Statutes (HRS), Use of Intoxicants While Operating a Vehicle, you are being informed of the following:

1. _____ If you choose to take an alcohol concentration test and the test result is below the legal limit of 0.08,

(continued. . .)

4

reading the sanctions form to Scalera, Officer Krekel initialed next to the various sections that Scalera "refused to initial and also sign." Officer Krekel asked Scalera if he understood what was read to him from the sanctions form, and Scalera did not respond. When Officer Krekel informed Scalera that his refusal to sign constituted a refusal to submit to testing,

(. . .continued)

> the administrative revocation proceedings will be terminated with prejudice.
>
> 2. ____ If you are under twenty-one years of age it is unlawful for you to operate a vehicle upon a public way, street, road, or highway or on or in the waters of the State while under the influence of a measurable amount of alcohol (0.02 or greater, but less than 0.08).
>
> 3. ____ If you choose to take a drug test and the test fails to indicate the presence of one or more drugs in an amount sufficient to impair your ability to operate a vehicle in a careful and prudent manner, the administrative revocation proceedings will be terminated with prejudice.
>
> 4. ____ The test or tests to determine your drug content shall also be admissible in determining your alcohol concentration, but your submission to testing for drugs shall not substitute for alcohol concentration tests.
>
> 5. ____ If you are convicted of operating a vehicle under the influence of intoxicants or have your vehicle license or privilege to operate a vessel suspended or revoked, you may be ordered to reimburse the county for the cost of a blood or urine test or both.
>
> . . . .
>
> 11. ____ Criminal charges may be filed against you under part IV, Prohibited Conduct, section 291E.
>
> 12. ____ If you refuse to be tested, criminal charges may be filed against you under part IV, Prohibited Conduct, section 291E or if applicable, you may be subject to the sanctions of section 291E-65.

Scalera asked Officer Krekel to go over the sanctions form from the first to the last page.[2] Officer Krekel handed Scalera the sanctions form, but according to Officer Krekel, Scalera "didn't want to take a test so that also constituted a refusal."

Officer Krekel did not hear Scalera ask for an attorney. Officer Krekel noted, however, that Scalera "could have" asked for an attorney, but that he did not "recall [Scalera] saying that." Officer Krekel stated that "[i]t wouldn't have mattered anyways because the forms state that you're not entitled to an attorney during the implied consent."

### B. District Court and Appellate Proceedings

On July 1, 2013, the State of Hawaiʻi filed a written complaint in the District Court of the First Circuit, Kaneohe Division (district court), charging that on June 28, 2013, John Scalera committed the offense of operating a vehicle under the influence of an intoxicant (OVUII) in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1)[3] (count 1) and the offense

---

[2]     HPD Sergeant Dela Cruz observed Officer Krekel read the implied consent form to Scalera. Sergeant Dela Cruz testified that he did not recall if Officer Krekel reread the implied consent form after Scalera requested the second reading, but that if Officer Krekel had reread the form, then he (Sergeant Dela Cruz) would have noted the second reading in his written report, which he had not.

[3]     HRS § 291E-61 provides in relevant part:

(continued. . .)

of refusal to submit to a breath, blood, and/or urine test in violation of HRS § 291E-68[4] (count 2).  If convicted of the OVUII charge, Scalera was subject to sentencing as a first-time offender pursuant to HRS § 291E-61(b)(1) (Supp. 2012).

Prior to trial, Scalera filed a motion to suppress seeking to preclude the use of "all evidence indicating that, on or about June 28, 2013, [Scalera] was operating a vehicle under the influence of an intoxicant . . . and refused to submit to testing."  Scalera alleged that this evidence was obtained in violation of his rights, citing article I, section 7 of the Hawai'i Constitution, the Fourth and Fourteenth Amendments to the

---

(. . .continued)

> (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person or guard against casualty. . . .

HRS § 291E-61(a)(1) (Supp. 2012).

[4]      At the time Scalera was charged, HRS § 291E-68 stated as follows:

> Except as provided in section 291E-65, refusal to submit to a breath, blood, or urine test as required by part II is a petty misdemeanor.

HRS § 291E-68 (Supp. 2012) (repealed Apr. 26, 2016).

7

United States Constitution, and HRS §§ 291E-11(b) (2007), 291E-15 (2007), and 803-9 (1993).[5]

In a memorandum in support of his motion, Scalera argued that evidence in his case should be suppressed because he was "preemptively and illegally denied" the right to consult with counsel as provided by HRS § 803-9. Specifically, Scalera alleged that the implied consent form "provides an overbroad and incorrect statement of law that no right to counsel exists prior to making an informed consent decision, thereby ignoring the rights afforded to [Scalera] under HRS § 803-9." Scalera contended that because he was denied a reasonable opportunity to consult with an attorney, he did not make a knowing and intelligent decision with regard to his informed consent options. Scalera did not base the arguments in his memorandum on any provisions of the Hawai'i Constitution or the United States Constitution or contend that he had been unlawfully stopped or interrogated by police.

In its opposition memorandum, the State contended that Scalera had no statutory right to consult with counsel under HRS § 803-9 prior to making his decision to refuse or submit to

_____

[5] The Honorable James H. Ashford presided over the motion to suppress hearing.

8

testing, citing State v. Severino, 56 Haw. 378, 380, 537 P.2d 1187, 1189 (1975).  The State submitted that reading the implied consent form and administering breath or blood tests are "in the nature of a booking procedure," and therefore, a defendant does not have any right to counsel during this time.  The State also maintained that the implied consent form had already "adequately informed" Scalera of the consequences of his refusal.

An evidentiary hearing was held on Scalera's motion.[6] At the conclusion of the hearing, the district court denied Scalera's motion to suppress.[7]  In its oral ruling, the court stated that it viewed the motion in large part based upon a "defendant's right to counsel" under HRS § 803-9.  The court determined there was no violation of HRS § 803-9 because it was not an "interrogation situation."  The court also concluded that Scalera understood his rights and the information on the implied consent form and the sanctions form, and thus the court found that Scalera understood the consequences of his decisions.  The

---

[6]     Three HPD officers testified for the State regarding the circumstances leading to Scalera's arrest and the events at the police station as recounted above.  Scalera did not testify or present any evidence.

[7]     Scalera's counsel argued at the motion to suppress hearing that Scalera did not understand the implied consent and sanctions forms, that there was inconsistent police testimony with respect to his arrest and the standardized field sobriety test administration, and that as a result, the field sobriety test results and the implied consent form should be excluded from evidence.  Scalera did not present argument with respect to any alleged constitutional violations.

district court in its ruling did not address or make any findings of fact or conclusions of law regarding the traffic stop.

Following a trial at which Scalera and several HPD officers testified,[8] the district court concluded that the State had proved beyond a reasonable doubt the OVUII offense charged in count 1 and the refusal offense charged in count 2. On July 22, 2014, the district court entered its Notice of Entry of Judgment and/or Order and Plea/Judgment (district court judgment).[9]

Scalera appealed the district court judgment to the Intermediate Court of Appeals (ICA), arguing that the court had erred in failing to determine in its motion to suppress ruling whether the traffic stop was unlawful. Scalera also contended that the court had erred in denying his motion to suppress. Specifically, Scalera maintained that his statutory right to counsel under HRS § 803-9 had been violated and that the

---

[8]     At trial, Scalera testified that he did not understand portions of the implied consent form, and he could not read the form because he did not have his glasses. Scalera also testified that he asked for an attorney during the reading of the implied consent form. Scalera did not indicate the course of action that he may have taken had counsel been provided.

[9]     The Honorable Michael A. Marr presided. Scalera was sentenced to various monetary sanctions, 72 hours of community service, a substance abuse assessment, and a one-year license revocation.

district court had erred in concluding otherwise. He also contended that the district court had erroneously concluded that he was not subject to an interrogation implicating his <u>Miranda</u> rights.[10] In an April 29, 2016 Summary Disposition Order, the ICA affirmed the district court judgment. The ICA rejected Scalera's argument that the district court had failed to rule on the lawfulness of the traffic stop, stating that Scalera failed to raise an argument regarding the constitutional validity of the stop before the district court. Further, the ICA concluded that Scalera failed to establish that the stop was in fact unlawful and thus it was not plain error for the district court to deny his motion to suppress.[11]

---

[10] In his opening brief to the ICA and in his application for certiorari to this court, Scalera acknowledged that he had <u>not</u> based his motion to suppress on an alleged failure to provide him with <u>Miranda</u> warnings. However, Scalera maintained that the district court's mention of the word "interrogation" in its oral ruling indicated that the court had considered his contentions regarding a right to counsel and right against self-incrimination.

Similarly, Scalera recognized that he did not "specifically state [before the district court] that evidence was obtained as a result of an illegal traffic stop." He contended, however, that he properly preserved this argument on appeal because he cited article I, section 7 of the Hawai'i Constitution in his motion to suppress and because testimony at the suppression hearings implicated the lawfulness of the stop.

[11] The ICA additionally determined that "Scalera did not preserve an argument before the District Court that evidence should be suppressed because of a violation of his <u>Miranda</u> rights," and therefore, he had waived this argument on appeal.

With respect to Scalera's argument that he was denied his right to counsel under HRS § 803-9, the ICA appears to have concluded that this statute is only implicated following an interrogation.  The ICA relied on its opinion in State v. Won, 134 Hawai'i 59, 332 P.3d 661 (App. 2014), vacated on other grounds, 137 Hawai'i 330, 372 P.3d 1065 (2015), for the proposition that police inquiry into whether an OVUII suspect will submit to testing does not constitute "interrogation," and, consequently, there was no violation of HRS § 803-9.  The ICA posited that even assuming there was a violation of the statute, Scalera was not entitled to suppression of any evidence because he did not (1) claim that the statutory violation had constitutional dimensions or (2) demonstrate by a preponderance of the evidence that any failure to permit him to consult with counsel led to his refusal to submit to testing.

## II.    STANDARDS OF REVIEW

We review a "ruling on a motion to suppress de novo to determine whether the ruling was 'right' or 'wrong.'"  State v. Edwards, 96 Hawai'i 224, 231, 30 P.3d 238, 245 (2001) (quoting State v. Jenkins, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)).  "[F]actual determinations made by the trial court deciding pretrial motions in a criminal case [are] governed by the clearly erroneous standard," and "conclusions of law are

reviewed under the right/wrong standard." Id. (quoting State v. Eleneki, 92 Hawai'i 562, 564, 993 P.2d 1191, 1193 (2000)).

### III.    DISCUSSION

Scalera argues that the district court failed to rule on his motion to suppress with respect to the lawfulness of the traffic stop. He further maintains that the district court erred in denying his motion to suppress on the grounds that the police violated his statutory right to counsel under HRS § 803-9.[12]

### A.    Violation of Article I, Section 7 of the Hawai'i Constitution and Fourth and Fourteenth Amendments to the United States Constitution

Scalera initially argues that the district court erred in failing to rule on the portion of his motion to suppress related to article I, section 7 of the Hawai'i Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. The ICA concluded that Scalera had failed to properly raise the constitutional validity of the traffic stop

---

[12]    In his application for certiorari to this court, Scalera also contends that he was subject to custodial interrogation requiring Miranda advisements. As Scalera acknowledges, his motion to suppress was not based upon an alleged failure to provide him with Miranda warnings, and no written or oral argument was made to the district court on this ground. See supra note 10. The district court also made no findings of fact or conclusions of law regarding this issue, and the court's single reference to interrogation concerned the application of HRS § 803-9, which was the focus of Scalera's motion. Accordingly, the factual record is insufficiently developed to consider a Miranda issue under a plain error analysis.

before the district court and that it was not plain error for the court to deny the motion.

Assuming, without deciding, that Scalera raised the propriety of the traffic stop to the district court, Officer Cullen testified that he stopped Scalera because Scalera crossed over a solid traffic line twice and over a broken traffic line once. While Scalera argues that Officer Cullen's testimony contained some "troubling discrepancies," these "discrepancies" did not negate Officer Cullen's testimony that he observed Scalera cut across at least one of the traffic lane markings. Additionally, the district court in its ruling did not in any way indicate that it viewed Officer Cullen's testimony as not credible, and appellate courts are required to "give full play to the right of the fact finder to determine credibility." State v. Valdivia, 95 Hawai'i 465, 471, 24 P.3d 661, 667 (2001) (quoting State v. Jenkins, 93 Hawai'i 87, 99, 997 P.2d 13, 25 (2000)). Thus, Scalera failed to prove by a preponderance of the evidence that Officer Cullen's stop of his vehicle was unlawful. See State v. Perez, 111 Hawai'i 392, 395, 141 P.3d 1039, 1042 (2006). Accordingly, the ICA did not err in determining that Scalera failed to establish that his rights were violated under article I, section 7 of the Hawai'i

14

Constitution or the Fourth and Fourteenth Amendments to the United States Constitution.

### B.    Violation of HRS § 803-9

Scalera also maintains that the district court erred in denying his motion to suppress on the grounds that the police violated his statutory right to access counsel under HRS § 803-9.  He contends that HRS § 803-9 afforded him a "right to consult with an attorney at any time after he was arrested for OVUII," including the time prior to being questioned regarding whether he would submit to alcohol concentration testing.

In considering the merits of Scalera's argument, we analyze the rights provided by HRS § 803-9, address whether Scalera's rights were violated, and determine the ramifications of a violation of HRS § 803-9 under the facts of this case.

### 1.    HRS § 803-9

HRS § 803-9, entitled "Examination after arrest; rights of arrested person," provides in relevant part:

> It shall be unlawful in any case of arrest for examination:
>
> (1)    To deny to the person so arrested the right of seeing, at reasonable intervals and for a reasonable time at the place of the person's detention, counsel or a member of the arrested person's family;
>
> (2)    To unreasonably refuse or fail to make a reasonable effort, where the arrested person so requests and prepays the cost of the message, to send a telephone, cable, or wireless message through a police officer

15

or another than the arrested person to the counsel or member of the arrested person's family;

(3)    To deny to counsel (whether retained by the arrested person or a member of the arrested person's family) or to a member of the arrested person's family the right to see or otherwise communicate with the arrested person at the place of the arrested person's detention (A) at any time for a reasonable period for the first time after the arrest, and (B) thereafter at reasonable intervals and for a reasonable time;

(4)    In case the person arrested has requested that the person see an attorney or member of the person's family, to examine the person before the person has had a fair opportunity to see and consult with the attorney or member of the person's family;

(5)    To fail, within forty-eight hours of the arrest of a person on suspicion of having committed a crime, either to release or to charge the arrested person with a crime and take the arrested person before a qualified magistrate for examination.

HRS § 803-9 (1993).  Thus, under HRS § 803-9, any person "arrested for examination" may not be denied the opportunity to see, send a message, or otherwise communicate with counsel or a member of the arrested person's family in accordance with the time, place, and manner considerations set forth in the statute.[13]  Id.  "Any person violating or failing to comply" with

_____

[13]    The text of the statute prohibits the denial of access to counsel and does not explicitly grant affirmative rights.  See HRS § 803-9.  However, this court has reiterated that HRS § 803-9 operates to grant rights to see, send a message, and otherwise communicate with counsel.  See State v. Ababa, 101 Hawaiʻi 209, 215, 65 P.3d 156, 162 (2002) ("on its face the purpose of HRS § 803-9 is to afford certain enumerated 'right[s]' to persons in police custody, one of which is access to an attorney"); State v. Edwards, 96 Hawaiʻi 224, 233, 30 P.3d 238, 247 (2001) (describing amendments to HRS § 803-9 enacted to protect "the right[s] of persons arrested and detained merely for examination" (quoting S. Stand. Comm. Rep. No. 440, in 1941 Senate Journal,

(continued. . .)

HRS § 803-9 "shall be fined not more than $500 or imprisoned not more than one year, or both."  HRS § 803-10 (1993).

"HRS § 803-9 was originally enacted as part of the 1869 Penal Code of the Kingdom of Hawai'i."[14]  State v. Edwards, 96 Hawai'i 224, 233, 30 P.3d 238, 247 (2001).  Since its enactment, it has been amended several times to broaden the protections that it provides.  In 1915, the legislature amended the statute "to provide an arrested person with the right to see counsel."  Id.  In 1927, the legislature again amended the statute to provide an arrested person with the "right to see a member of his or her family and to add a new section creating a penalty for violation of the statute."  Id.  In 1941, the statute was broadened "to grant to a person arrested for examination the right not only of seeing but otherwise communicating with counsel or a member of his [or her] family."  Id. (alteration in original) (quoting H. Stand. Comm. Rep. No.

---

(. . .continued)

at 1086)).  The legislative history discussed below, see infra, affirms this understanding of HRS § 803-9.

[14]    The original enactment provided that "[i]n all cases of arrest for examination, the person making the same must conduct the party arrested before the court or magistrate empowered to take such examination, within forty-eight hours after his arrest, except in cases where a longer delay is absolutely necessary to meet the ends of justice."  State v. Edwards, 96 Hawai'i 224, 233 n.9, 30 P.3d 238, 247 n.9 (2001) (quoting Penal Code of the Kingdom of Hawai'i ch. 49, § 9 (1869)).

17

324, in 1941 House Journal, at 1249).  The purpose of the 1941 amendment included "safeguard[ing], as nearly as may be, the right of persons arrested and detained merely for examination, a process which has, in the past, been grossly abused," and "clarif[ying]" the "rights of the person arrested for examination and of his [or her] family and counsel."  Id. (alterations in original) (quoting S. Stand. Comm. Rep. No. 440, in 1941 Senate Journal, at 1086; H. Stand. Comm. Rep. No. 324, in 1941 House Journal, at 1249).

Thus, this court has observed that the "underlying purpose in [HRS § 803-9] is to protect an accused's right to counsel."  State v. Ababa, 101 Hawai'i 209, 215, 65 P.3d 156, 162 (2003).  As we explained in Edwards, HRS § 803-9 is consistent with recommendations of the American Bar Association regarding an accused's right to communicate with counsel.  96 Hawai'i at 233-34, 30 P.3d at 247-48 (citing Am. Bar Ass'n, ABA Project on Minimum Standards for Criminal Justice (2d ed. 1986)); see also Am. Bar Ass'n, ABA Standards for Criminal Justice: Prosecution and Defense Function, Standard 4-2.1 (3d ed. 1993) (ABA Standards).[15]  The ABA Standards, in Standard 4-2.1, entitled

_____

[15]    This court in Edwards relied on the 1986 second edition of the ABA Project on Minimum Standards for Criminal Justice in interpreting HRS § 803-9.  See Edwards, 96 Hawai'i at 233-34, 30 P.3d at 247-48.  The renamed

(continued. . .)

18

"Communication," provides that an arrested person should be guaranteed by statute or rule the right to "prompt and effective communication with a lawyer" and that "reasonable access to a telephone or other facilities" should be required for that purpose. See ABA Standards, Standard 4-2.1.

The Commentary to Standard 4-2.1 elaborates that "[m]ost jurisdictions long have provided by statute for the right of a person in custody to communicate with an attorney, either by a message carried by a peace officer or by a telephone call." ABA Standards, Standard 4-2.1 Commentary, at 141 (3d ed. 1993). According to the Commentary, if the right to communicate with an attorney "is to be meaningful, it must be interpreted to permit prompt completion of the communication." Id.[16]

This court observed in Edwards that "the purpose served by the right to communicate with a lawyer" pursuant to

_____

(. . .continued)

third edition and its commentary were published in 1993, and Standard 4-2.1 remained substantively identical to its 1986 predecessor. Thus, the standards and commentary from the third edition, published in 1993, will be referenced in this opinion.

[16] In Edwards, we also noted the consistency between this Commentary and Standard 5-8.1 of the American Bar Association's standards relating to the provision of defense services, which mandates that "[a] person taken into custody or otherwise deprived of liberty" should "immediately be informed" of the right to counsel. See Am. Bar Ass'n, ABA Standards for Criminal Justice: Providing Defense Services, Standard 5-8.1 (3d ed. 1993); Edwards, 96 Hawai'i at 234, 30 P.3d at 248 (analyzing predecessor version of Standard 5-8.1 and related commentary).

the American Bar Association standards "is broader in scope than that protected by the Miranda warning." Edwards, 96 Hawai'i at 234, 30 P.3d at 248; see also ABA Standards on Defense Services, Standard 5-8.1(a) Commentary, at 101 (3d ed. 1993) ("the fact that a warning valid within the meaning of Miranda has been made should not in itself be considered as fulfilling the requirement of a formal offer [of counsel]"). Accordingly, we concluded in Edwards that "the fact that [the defendant] was advised in the Miranda warning of her right to have an attorney present during interrogation would not obviate the application of HRS § 803-9(2)." Edwards, 96 Hawai'i at 234, 30 P.3d at 248. That is, "the police can comply with Miranda requirements but still violate HRS § 803-9(2)." Id.

This principle is consistent with the plain language of HRS § 803-9, which does not require that an accused be subject to interrogation, that an examination must be occurring, or that an examination has occurred in order to be guaranteed the protections provided by the statute. See HRS § 803-9. Rather, the statute prohibits any individual after "arrest for examination" from being denied communication with counsel. Id.

Additionally, the term "arrest for examination" is not limited to an interrogation pursuant to an arrest, but rather, to the period of time following an arrest. The original version

20

of the statute indicated that "arrest for examination" referred to an arrest generally, effectuated for the purpose of bringing the arrestee before a court or magistrate:

> In all cases of arrest for examination, the person making the same must conduct the party arrested before the court or magistrate empowered to take such examination, within forty-eight hours after his arrest, except in cases where a longer delay is absolutely necessary to meet the ends of justice.

Territory of Haw. v. Aquino, 43 Haw. 347, 369 (Haw. Terr. 1959) (emphasis added) (quoting Penal Code of the Kingdom of Hawai'i ch. 49, § 9 (1869)).  The current version of the statute, and in effect at the time of Scalera's arrest, similarly indicates that an "arrest for examination" occurs whenever a person is arrested "on suspicion of having committed a crime."  See HRS § 803-9(5) ("It shall be unlawful in any case of arrest for examination . . . [t]o fail within forty-eight hours of the arrest of a person on suspicion of having committed a crime either to release or to charge the arrested person with a crime and take the arrested person before a qualified magistrate for examination.").

This understanding is also evidenced by the previously discussed legislative history of the statute, which does not indicate that an arrested person's statutory right of access to counsel under HRS § 803-9 was intended to apply only in situations of interrogation.  See Edwards, 96 Hawai'i at 233, 30 P.3d at 247.  Additionally, as stated, this court recognized in

21

Edwards that HRS § 803-9 was not limited to situations of interrogation; rather, its protections are independent of Miranda requirements. See id. Thus, in order to find a violation of HRS § 803-9, a court need not determine whether the defendant was under "custodial interrogation," as it must do in order to find a violation of a defendant's Miranda rights. See id. at 233-34, 30 P.3d at 247-48. The term "arrest for examination" accordingly does not restrict the applicability of HRS § 803-9 to arrestees subject to police interrogation.

The State argues, however, that OVUII arrestees do not have a statutory right to access counsel when deciding whether to submit to alcohol concentration testing in light of this court's 1975 decision in State v. Severino, 56 Haw. 378, 380-81, 537 P.2d 1187, 1189 (1975). In Severino, a driver appealed the administrative revocation of his driver's license following an arrest for OVUII. Id. at 380, 537 P.2d at 1188. Prior to submitting to alcohol concentration testing, the driver was affirmatively advised that he had a Miranda right to speak with an attorney, and the driver refused to submit to testing until he could consult with counsel. Id. at 380, 537 P.2d at 1188. The police deemed his refusal sufficient to invoke the sanctions of Hawaii's implied consent statute. Id. at 380-81, 537 P.2d at 1188-89. In appealing the administrative revocation, the driver

contended that he was entitled to consult with counsel prior to deciding whether to submit to alcohol concentration testing. Id.

In considering the driver's appeal, the court began its analysis by citing the Sixth Amendment to the United States Constitution and article I, section 11 of the Hawai'i Constitution and noting that these provisions afforded "an accused . . . the right to assistance of counsel in all criminal prosecutions." Id. at 380, 537 P.2d at 1189 (emphasis added) (quotations omitted). Because a civil license revocation was "in the nature of administrative proceedings" rather than a criminal prosecution, the court concluded that the right to counsel did not apply. Id. at 380-81, 537 P.2d at 1189 (pointing out that "[a]ctions taken under the implied consent law . . . are civil in nature"). The court also concluded that the driver was not entitled to Miranda warnings because "Miranda rights are not applicable to implied consent proceedings." Id. at 381, 537 P.2d at 1189.

The Severino court's analysis of a defendant's right to consult with counsel determined the constitutional right to an attorney with regard to a civil administrative revocation proceeding, and the court did not address the right to communicate with a lawyer under HRS § 803-9. See id. at 380-81,

23

537 P.3d at 1189. Therefore, the holding of Severino does not govern our analysis of HRS § 803-9.[17]

In this case, the district court reasoned that because Scalera was not in an "interrogation situation," there was no violation of HRS § 803-9. The ICA, relying on its Won opinion, similarly concluded that "[b]ecause the refusal to submit to testing is nontestimonial, the police inquiry into whether an OVUII suspect will submit to testing does not constitute interrogation," and therefore, there was no violation of HRS § 803-9. State v. Won, 134 Hawai'i 59, 332 P.3d 661 (App. 2014), vacated on other grounds, 137 Hawai'i 330, 372 P.3d 1065 (2015).

Both the district court and the ICA predicated the statute's applicability upon a non-existent requirement.[18] Whether Scalera's statements were testimonial or nontestimonial, or whether police interrogation did or did not occur, is not determinative of whether Scalera's statutory right to access

_____

[17] To the extent that the ICA's opinion in State v. Won, 134 Hawai'i 59, 74, 332 P.3d 661, 676 (App. 2014), vacated on other grounds, 137 Hawai'i 330, 372 P.3d 1065 (2015), ruled that Severino denied an arrestee of a criminal offense the statutory right to access counsel under HRS § 803-9, it is overruled.

[18] Because the protections afforded by HRS § 803-9 do not depend on the occurrence of an interrogation, we need not consider the ICA's holding in Won that law enforcement's inquiry into whether an arrestee is willing to submit to alcohol concentration testing does not constitute interrogation within the meaning of Miranda with respect to a law that imposes criminal sanctions for a driver's refusal to submit to testing. See Won, 134 Hawai'i at 66-74, 332 P.3d at 668-76.

24

counsel was infringed.  As discussed, neither police
interrogation nor a testimonial statement is required to trigger
the applicability of HRS § 803-9.  Thus, following his arrest,
Scalera was entitled to avail himself of the protections
afforded by the statute.[19]

## 2.    Violation of HRS § 803-9

HRS § 803-9 "requires that, when a defendant being
questioned by police indicates that he or she wants counsel,"
the police "must make reasonable efforts to contact counsel."
State v. Ababa, 101 Hawai'i 209, 216, 65 P.3d 156, 163 (2003)
(analyzing HRS § 803-9(2)).  An indication of a desire to speak
with counsel will not "rest on a semantical parsing of whether
[the defendant] asked to 'see,' to 'talk to,' to 'call,' or to
'contact' an attorney."  Id. at 215-16, 65 P.3d at 162-63 (an

_____

[19]     We note that, in general, HRS § 803-9 affords access to counsel
at a reasonable time and in a reasonable manner.  See, e.g., HRS § 803-9(1)
(arrestee may not be prohibited from seeing counsel "at reasonable intervals
and for a reasonable time"); HRS § 803-9(2) (an individual may not
"unreasonably refuse" to send a message to counsel upon an arrestee's request
or "fail to make a reasonable effort" to do so).  HRS § 803-9 therefore
provides OVUII arrestees with reasonable time and opportunity to access
counsel, and if counsel is not available within that time frame, an arrestee
can be required to make a decision regarding testing without the advice of a
lawyer when further delay will significantly postpone or materially interfere
with alcohol concentration testing.  See HRS § 803-9; see also People v.
Washington, 12 N.E.3d 1099, 1102-03 (N.Y. 2014) (arrestee's statutory right
to access counsel may not be used to significantly postpone or unduly
interfere with alcohol concentration testing); State v. Vietor, 261 N.W.2d
828, 832 (Iowa 1978) (individual arrested for driving under the influence of
an intoxicant may invoke statutory right to counsel, but the right may not be
used to "materially interfere" with the timely administration of alcohol
concentration testing).

invocation of the right to an attorney in response to <u>Miranda</u> warnings was "sufficiently precise to put the detectives on notice of their obligations under HRS § 803-9(2)").

Although HRS § 803-9 contains no explicit requirement that arrestees be affirmatively advised of the protections it guarantees, law enforcement may not preempt an invocation of these protections by giving misleading or incorrect information concerning access to counsel. In construing a statute similar to HRS § 803-9, for example,[20] the Supreme Court of Iowa in <u>Didonato v. Iowa Department of Transportation</u> ruled that although "the statute does not require an officer to tell an arrested person that he has a right to counsel," where the statute is "implicated" by the circumstances of the arrest, the officer must give correct advisements of the rights it provides. 456 N.W.2d 367, 371 (Iowa 1990). In <u>Didonato</u>, an individual arrested under suspicion of operating a vehicle while intoxicated requested to call a friend prior to submitting to blood alcohol concentration testing. <u>Id.</u> at 370. The Iowa statutory right to counsel, however, only provided a right to

---

[20] <u>See</u> Iowa Code § 804.20 (1987) ("Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. . . .").

call, consult, and see an attorney or a member of the person's family, rather than a friend.  Id.  Although the Iowa Supreme Court recognized that law enforcement had no obligation to proactively inform the arrestee of these rights, it concluded that the implication of the statute by the arrestee's request to speak with a friend, rather than a lawyer or family member, required the officer to correct the individual's misunderstanding as to the rights the statute provided regarding the persons the arrestee could call, consult, and see.  Id. at 371.

The Court of Appeals of New York, that state's highest court, has similarly concluded that an arrestee's failure to request a lawyer will not obviate law enforcement's duty to correct an unknown or misapprehended circumstance relating to a statutory right to consult with counsel.  See People v. Washington, 12 N.E.3d 1099, 1102-03 (N.Y. 2014).  In Washington, the defendant was arrested for driving while intoxicated, taken to the police department, and informed about her alcohol concentration testing options.  12 N.E.3d at 1100-01.  At no point did the defendant request to speak with an attorney.  Id. at 1102.  In the meantime, the defendant's family had contacted an attorney, who had promptly telephoned the police department to request to speak with the defendant.  Id. at 1101.  Law

enforcement failed to communicate to the defendant that counsel had called for her, and she subsequently submitted to a breathalyzer test. Id. In responding to the State's appeal of her successful motion to suppress the breath test results, the defendant asserted that her right to counsel was violated when the police officers failed to advise her about the lawyer's communication before the breathalyzer test was performed. Id. at 1103. The New York Court of Appeals agreed. Id. The court reasoned that "the statutory right to legal consultation" applies when an attorney contacts law enforcement seeking to speak with an arrestee, and that such contact requires the police to inform the arrestee of counsel's request. Id.

In this case, the evidence presented at the motion to suppress hearing demonstrates that the implied consent form, which was read to Scalera by Officer Krekel at the police station following his arrest, specifically advised Scalera that he was "not entitled to an attorney before [he] submit[s] to any tests [sic] or tests to determine [his] alcohol and/or drug content." As a result of the reading of the implied consent form, the police mistakenly indicated to Scalera that he had no right to request or communicate with counsel following his arrest and prior to deciding whether to submit to or refuse alcohol concentration testing. Indeed, Officer Krekel testified

28

as to the clear meaning of the advisement: "It wouldn't have mattered anyways [if Scalera had asked for an attorney] because the forms state that you're not entitled to an attorney during the implied consent."

This court has not yet considered the question of whether HRS § 803-9 is violated when law enforcement affirmatively advises an arrestee in a misleading manner that may preempt a request for access to counsel. While we note that HRS § 803-9 does not expressly require law enforcement to advise arrestees of the protections it affords, if arrestees may be affirmatively misinformed that they have no right to communicate or consult with counsel, many of the statute's protections would be vitiated. Cf. Minneapolis Fire & Marine Ins. v. Matson Nav. Co., 44 Haw. 59, 67-68, 352 P.2d 335, 340 (1960) (rejecting construction of a statute that operates to "nullify[] [the statute's] beneficial purpose"). Permitting an incorrect advisement would also contravene the statute's important purpose of "safeguard[ing], as nearly as may be, the right[s] of persons arrested and detained merely for examination, a process which has, in the past, been grossly abused." State v. Edwards, 96 Hawai'i 224, 233, 30 P.3d 238, 247 (2001) (first alteration in original) (quoting S. Stand. Comm. Rep. No. 440, in 1941 Senate Journal, at 1086). Indeed, allowing law enforcement to give

29

arrestees misleading advisements regarding their right to access counsel under HRS § 803-9 may result in the very harm that the statute seeks to prevent.  Id.

Additionally, excusing an incomplete or incorrect advisement in the context of an OVUII arrest would be inconsistent with our requirement that decisions with respect to alcohol concentration testing be knowing, intelligent, and accurately informed, particularly because counsel may assist the arrestee in deciding whether to consent to or refuse testing in the first place.  See State v. Won, 137 Hawai'i 330, 350 n.38, 372 P.3d 1065, 1085 n.38 (2015) (noting that counsel may serve an important function in assisting an arrested individual in deciding whether to consent to alcohol concentration testing).  To conclude that a police officer's affirmative denial of the statutory right to access counsel does not violate HRS § 803-9 would sanction precisely the sort of "arbitrary, false, or misleading" advisement by law enforcement that we have repeatedly rejected in this jurisdiction.  See State v. Wilson, 92 Hawai'i 45, 53-54, 987 P.2d 268, 276-77 (use of a form providing "inaccurate and misleading" information on the penalties for failing a blood alcohol test rendered a defendant's consent to submit to such a test not knowing and intelligent); see also Castro v. Admin. Dir. of the Courts, 97

Hawai'i 463, 470, 40 P.3d 865, 872 (2002) (same); State v. Garcia, 96 Hawai'i 200, 29 P.3d 919 (2001) (applying Wilson retroactively).

The reasoning of the Iowa Supreme Court and the Court of Appeals of New York is also persuasive. See Didonato, 456 N.W.2d at 371; Washington, 12 N.E.3d at 1102-03. In Didonato, the arrestee's request to contact someone other than a lawyer or family member required the police to correct the misunderstanding and advise the arrestee of his statutory rights with respect to who he could contact under the state's statutory right to counsel provision. 456 N.W.2d at 371. In Washington, where the arrestee was unaware that an attorney had been contacted on her behalf and wanted to speak with her, circumstances similarly required law enforcement to inform the defendant of this unknown situation and her right to speak with the attorney. 12 N.E.3d at 1102-03. These cases suggest that an arrestee's known misapprehension regarding a statutory right to consult with counsel or other specified person requires law enforcement to remedy the incorrect or unknown information regarding the right. When the arrestee's misapprehension is caused by law enforcement's affirmative, incorrect advisement rather than mere silence, the requirement to correct the misunderstanding is all the more vital. See Didonato, 456

N.W.2d at 370-71 (arrestee's lack of knowledge due to officer's silence); Washington, 12 N.E.3d at 1102-03 (same).

In this case, Officer Krekel gave Scalera incorrect information relating to HRS § 803-9 when, following Scalera's arrest, he read from the implied consent form that Scalera was not entitled to an attorney before submitting to alcohol concentration testing. This misleading information clearly implicated Scalera's statutory right to see, send a message to, and otherwise communicate with counsel following an arrest for examination under HRS § 803-9. See Didonato, 456 N.W.2d at 371; see also Edwards, 96 Hawai'i 224, 30 P.3d 238; Ababa, 101 Hawai'i 209, 65 P.3d 156. Because this advisement was not consistent with the protections afforded by HRS § 803-9, and because neither Officer Krekel nor any other HPD officer corrected the erroneous information provided, the reading of the implied consent form violated Scalera's statutory right to access counsel under HRS § 803-9.

### 3. Consequences of Violating HRS § 803-9

Finally, we consider whether evidence introduced by the State at Scalera's trial should be suppressed because of the statutory violation of HRS § 803-9.

"Generally, where evidence has been obtained in violation of a statute, that evidence is not inadmissible per se

32

in a criminal proceeding unless the statutory violation has constitutional dimensions." State v. Edwards, 96 Hawai'i 224, 237, 30 P.3d 238, 251 (2001) (quoting State v. Kaeka, 3 Haw. App. 444, 449, 653 P.2d 96, 100 (1982)). However, illegally obtained evidence is not only suppressed in situations where the statutory violation has constitutional dimensions. Id. at 238, 30 P.3d at 252. Rather, in "certain circumstances," this court uses its supervisory authority to "appl[y] the exclusionary rule to evidence obtained in violation of a statute or rule without requiring a constitutional violation." Id. at 238, 30 P.3d at 252 (citing State v. Wilson, 92 Hawai'i 45, 987 P.2d 268 (1999); State v. Pattioay, 78 Hawai'i 455, 896 P.2d 911 (1995)). In these situations, evidence will be suppressed where there is a "connection between the statutory violations and the evidence to be suppressed." Id. at 239, 30 P.3d at 253. This requires a showing by a preponderance of the evidence that the statutory violation "ultimately had an adverse impact on [the defendant's] substantive rights." State v. Ababa, 101 Hawai'i 209, 217-18, 65 P.3d 156, 164-65 (2003) (quoting Edwards, 96 Hawai'i at 239, 30 P.3d at 253).

### i. Relevant Caselaw

This court has been called upon on several occasions to consider the suppression of evidence when the basis of the underlying violation is statutory rather than constitutional.

In the seminal case of State v. Pattioay, we used our supervisory powers to suppress evidence obtained in violation of the Posse Comitatus Act (PCA). 78 Hawai'i 455, 468-69, 896 P.2d 911, 924-25 (1995). The PCA generally prohibits "direct involvement of military personnel in civilian law enforcement." Id. at 460, 467, 896 P.2d at 916, 923. In contravention of the PCA, undercover military personnel targeted civilians suspected of selling drugs and obtained the drugs as evidence against the civilians. Id. at 457-58, 896 P.2d at 913-14. In reviewing the defendants' motion to suppress the evidence obtained by the military, we acknowledged that the violation was statutory, rather than constitutional, and that the PCA already provided for "serious criminal sanctions." Id. at 466, 896 P.2d at 922. Nevertheless, we concluded that there existed "compelling state grounds that militate[d] in favor of suppression," including the deterrence of future illegal police conduct and the avoidance of relying on illegally obtained evidence "in the administration of criminal justice through the courts." Id. at 468, 896 P.2d at 924. We therefore suppressed the evidence under the authority

34

of our "supervisory powers in the administration of criminal justice."  Id. at 469, 896 P.2d at 925.

In State v. Wilson, a defendant charged with driving under the influence of alcohol was given misleading and inaccurate advisements on the possible statutory penalty for taking and failing an alcohol concentration test.  92 Hawai'i 45, 49-51, 987 P.2d 268, 272-74 (1999).  Citing Pattioay, we determined that the flawed advisement affected the defendant's ability to make a knowing and intelligent decision whether to refuse or submit to testing, therefore warranting suppression of the results of his subsequent blood test.  Id. at 52 n.10, 987 P.2d at 275 n.10.  In State v. Garcia, 96 Hawai'i 200, 207, 29 P.3d 919, 926 (2001), we applied Wilson retroactively and explained that suppression was warranted in Wilson because the failure of the police to render a complete explanation of the penalties "taint[ed] the arrestee driver's decision [to submit to testing]."  See also Castro v. Admin. Dir. of the Courts, 97 Hawai'i 463, 469-70, 40 P.3d 865, 871-72 (2002) (concluding that a deficient advisory regarding sanctions for alcohol concentration testing refusal required suppression of the refusal in civil license revocation proceedings).

We applied the principles elucidated in Pattioay and Wilson to a violation of HRS § 803-9 in State v. Edwards, 96

35

Hawai‘i 224, 30 P.3d 238 (2001). In Edwards, the defendant was arrested, placed in custody at the local police station, and then taken to an interview room for questioning. Id. at 226-27, 30 P.3d at 240-41. During the interview, the defendant indicated that she wanted to speak with a particular attorney. Id. Although police officers found the attorney's phone number in a telephone book, calling the number repeatedly resulted in a "not in service" message, and the officers did not pursue further contact. Id. at 227-28, 30 P.2d at 241-42. The next day, while still in custody, the defendant stated that "she wanted to talk to the detectives already and she didn't want a lawyer," waived her right to have an attorney present during questioning, and gave police officers several incriminating statements. Id. at 228-29, 30 P.3d at 242-43.

The Edwards court held that the police failed to make a "reasonable effort" to contact the defendant's requested attorney, thus violating HRS § 803-9. Id. at 236, 30 P.3d at 250. The court concluded, however, that the violation did not warrant suppression of the incriminating statements because the circumstances were different from Pattioay and Wilson, where "the defendants demonstrated a connection between the statutory violations and the evidence to be suppressed." Id. at 239-40, 30 P.3d at 253-54. The court explained that in Pattioay,

36

"undercover military police offers targeting civilians in violation of the PCA led to the seizure of drugs, the evidence to be suppressed"; similarly in Wilson, the inaccurate warning of the penalties for taking and failing an alcohol concentration test, which violated the implied consent statute, "was relevant to the defendant's decision to take the test."  Id. at 239, 30 P.3d at 253.

In Edwards, however, nothing in the record indicated that the defendant's statements were "the result of the police officers' failure to exercise reasonable efforts to contact [the attorney]."  Id.  The defendant had not testified at the hearing on her motion to suppress the statements, "so it [could not] be ascertained whether the failure to call her attorney affected her decision to give her statements."  Id.  Thus, given the circumstances,[21] the defendant failed to prove by a preponderance of the evidence that "the statements sought to be suppressed resulted from the police's failure to place [the defendant] in touch with counsel."  Id. at 239-40, 30 P.3d at 253-54.  This court emphasized, however, that "[its] holding [did] not

_____

    [21]    Additionally, we considered that the defendant "voluntarily initiated contact" with the officers to give a statement the day after her arrest, and that before giving her statement, the defendant declined an additional opportunity offered by the police officers "to obtain an attorney or a public defender."  Id. at 239, 30 P.3d at 253.

preclude suppression when warranted for a violation of HRS §
803-9" and reiterated that "[it] would not diminish the gravity"
of such a violation.  Id. at 239, 30 P.3d at 253.

We applied the reasoning of Edwards in State v. Ababa,
101 Hawai'i 209, 65 P.3d 156 (2003), in which this court found a
violation of HRS § 803-9 and ruled that suppression of
statements was required.  The defendant in Ababa was arrested,
placed in custody, and then taken to an interview room for
questioning, where he invoked his right to counsel.  Id. at 211,
65 P.3d at 158.  After waiting for several hours, the defendant
indicated he wanted to speak with the police officers; while
being escorted to the interview room, the defendant uttered an
expletive regarding the lawyer.  Id.  The defendant then waived
his right to counsel and gave several statements to the
officers.  Id.

The defendant moved to suppress the statements on the
ground that he invoked his right to counsel prior to the
interview.  Id. at 211, 65 P.3d at 158.  The defendant testified
at the hearing that he believed his invocation of the right to
counsel in response to Miranda warnings meant that police
officers would put him in contact with an attorney.  Id. at 214,
65 P.3d at 161.  The defendant explained that when "no attorney
showed up," he assumed that "they weren't gonna give [him] a

lawyer, so [he] decided to talk to them." Id. If a lawyer would have arrived to speak with him, the defendant testified that he would have sought advice on whether he should make a statement. Id.

The Ababa court found that the police officers' actions violated HRS § 803-9 because the defendant's communication that "he wanted to talk to an attorney in effect was tantamount to a request to talk to an attorney within the meaning" of the statute, and the officers failed to make "reasonable efforts" to contact counsel.[22] Id. at 215-16, 65 P.3d at 162-63. The court also determined that suppression was warranted of the statements made during the subsequent interview, because unlike in Edwards, "there [was] direct evidence that [the defendant's] decision to waive his rights and give a statement was connected to the detectives' failure to obtain an attorney." Id. at 217, 65 P.3d at 164. In support of this conclusion, the court pointed to the defendant's testimony that (1) he wanted an attorney to assist him in deciding whether to give a statement or not, (2) he believed the police officers

_____

[22] The Ababa court noted that the officers had "made no attempt to ascertain from [the defendant] whether he knew an attorney who could be contacted, whether [he] could afford an attorney, whether [he] wanted the use of a telephone and telephone book to contact one, or whether [he] desired the public defender's office be contacted." Id. at 216, 65 P.3d at 163.

would contact an attorney for him when he said he "wanted one," (3) he was not provided with a phone or other means of contacting an attorney on his own,[23] and (4) he decided to waive his right to counsel and give a statement because he believed the officers were not going to provide him with an attorney as he requested.  Id.

Our line of cases relating to suppression of evidence based on a statutory violation thus demonstrates that where the violation has no "constitutional dimensions," evidence may be excluded so long as the proponent demonstrates by a preponderance of the evidence a "connection between the statutory violations and the evidence to be suppressed." Edwards, 96 Hawai'i at 237-38, 239, 30 P.3d at 251-52, 253; see also Ababa, 101 Hawai'i at 164, 65 P.3d at 217.

---

[23]    When an arrestee has requested to send a message or otherwise communicate with counsel through the arrestee's cellphone or other electronic device in the arrestee's or law enforcement's possession, police officers may permit use of the device to contact counsel to maintain compliance with HRS § 803-9.  See, e.g., People v. Gelaj, 21 Misc. 3d 1120(A), 2008 NY Slip Op 52105(U) (N.Y. Sup. Ct. 2008) (arrestee's statutory right to counsel violated where arrestee asserted he wanted to communicate with attorney whose phone number was in his cellphone in police custody, and where police officer "did nothing to facilitate the phone's return to the defendant"); see also Edwards, 96 Hawai'i at 236 n.17, 30 P.3d at 250 n.17 (noting that police officers "could simply have made a telephone available to [the defendant]" to comply with the requirements of HRS § 803-9); Ababa, 101 Hawai'i at 163, 65 P.3d at 216 (police failed to make reasonable efforts to contact counsel where, inter alia, the police "made no attempt to ascertain from [the defendant] . . . whether [he] wanted the use of a telephone" to contact an attorney).

When the statutory violation results from a misleading warning regarding the penalties for refusing or failing an alcohol concentration test, our prior decisions have determined that suppression will be warranted because the misleading information as to the penalties "legally preclude[s] an arrestee from making 'a knowing and intelligent decision [regarding] whether to consent to or refuse'" such testing. Garcia, 96 Hawai'i at 207, 29 P.3d at 926 (quoting Wilson, 92 Hawai'i at 52 n.9, 987 P.2d at 275 n.9); see also Castro, 97 Hawai'i 463, 40 P.3d 865. However, in the context of suppression based on a violation of HRS § 803-9, the requisite "connection" is not so readily apparent, as the inability to see, contact, or consult with an attorney will not necessarily impact law enforcement's collection of the evidence sought to be suppressed.[24] Thus, when suppression is sought based on a violation of HRS § 803-9, the requirement that the defendant prove by a preponderant degree the "connection between the statutory violation[] and the evidence to be suppressed" necessitates a showing that the

---

[24]  Compare Edwards, 96 Hawai'i at 239, 30 P.3d at 253 ("it cannot be ascertained whether the failure to call [the defendant's] attorney affected [the defendant's] decision to give [the] statements" she subsequently sought to suppress), with Ababa, 101 Hawai'i at 217, 65 P.3d at 164 ("[Defendant] testified at the motion to suppress that his acquiescence in giving [the] statement" that he subsequently sought to suppress "was precipitated by the absence of an attorney").

violation of the defendant's statutory right to access counsel affected the procurement of the evidence sought to be suppressed. Edwards, 96 Hawai'i at 239, 30 P.3d at 253.

### ii. Suppression Not Warranted

Scalera seeks to suppress the implied consent form and his verbal statements indicating his refusal to submit to alcohol concentration testing.[25] To warrant suppression, Scalera must show by a preponderance of the evidence a "connection between the statutory violation[] [of HRS § 803-9]" and his decision to refuse to submit to alcohol concentration testing. Edwards, 96 Hawai'i at 239, 30 P.3d at 253.

As was the case in Edwards, Scalera "did not testify at the hearing on the motion to suppress, so it cannot be ascertained whether [the incorrect advisement] affected [his] decision" to refuse to submit to testing. Id. There is also no other evidence in the record of the motion hearing indicating that Scalera's decision to refuse to submit to testing "[was] the result of" the incorrect advisement of his statutory right to access counsel, id., or that his decision to refuse was

---

[25]    It appears that Scalera asserted before the district court that the sanctions form (including its notations regarding his refusal to submit to testing) should be excluded from evidence at trial, though he has not specifically addressed the admissibility of this form on certiorari.

"precipitated by the absence of an attorney."  Ababa, 101 Hawaiʻi at 217, 65 P.3d at 164.  "Without such links, it is difficult to conclude that [Scalera] has proven by a preponderance of the evidence" that the violation of HRS § 803-9 in this case ultimately resulted in his decision to refuse to submit to testing.  Edwards, 96 Hawaiʻi at 239, 30 P.3d at 253.

As stated by the Edwards court, our conclusion should not be viewed as "diminish[ing] the gravity of any violation of HRS § 803-9," id., and given the complexity of the implied consent and sanctions forms and the gravity of the consequences of submitting or refusing to submit to testing, an OVUII arrestee's decision with respect to alcohol concentration testing will often benefit from the assistance of counsel.[26]  See

---

[26]    It has been observed that understanding and then weighing the pros and cons of the various consequences and alternatives of submitting or refusing to submit to chemical testing "would be difficult for most people under the best of circumstances."  State v. Senn, 882 N.W.2d 1, 49 (Iowa 2016) (Wiggins, J., dissenting).

> To make the right decision, an individual suspected of [operating a motor vehicle while intoxicated] must quickly consider not only what the State can prove and what the likely penalty will be, but also what the future consequences might be for his or her occupation, family, and personal wellbeing.  The decision is final, and it will determine both the range of criminal penalties the individual will face and the charge that will appear on his or her permanent criminal record.  In these respects, the decision to submit or refuse to submit to a chemical test resembles the decision to plead to criminal charges.

Id.

State v. Won, 137 Hawai'i 330, 350 n.38, 372 P.3d 1065, 1085 n.38 (2015) (rejecting the argument that counsel would not benefit an individual deciding whether to submit to alcohol concentration testing and reasoning that "an important function of counsel is to explain to a client the choices that may be presented and ramifications that may flow from the election of one course of action as opposed to another"); see also id. at 369 n.17, 372 P.3d at 1104 n.17 (Nakayama, J., dissenting) (agreeing that counsel "may be of value" to an individual deciding whether to submit to alcohol concentration testing).

However, because Scalera failed to prove by a preponderance of the evidence a connection between the violation of HRS § 803-9 and his subsequent refusal to submit to alcohol concentration testing, the district court did not err in denying his motion to suppress, nor did the ICA err in affirming the district court's ruling.

## IV.     CONCLUSION

Both the district court and the ICA in this case incorrectly concluded that the statutory right to access counsel under HRS § 803-9 is only implicated by an interrogation following arrest.  The protections afforded by the statute do not depend on whether an interrogation has occurred.  Rather, an arrestee may not be preemptively refused the opportunity to see,

send a message, or otherwise communicate with counsel as provided by HRS § 803-9.  The reading of the implied consent form in this case, which included a misleading advisement on Scalera's right to access an attorney, both implicated and infringed on the statute.  As a result, Scalera's statutory right to access counsel under HRS § 803-9 was violated.  The district court erred in concluding otherwise, and the ICA erred in affirming this determination.  However, Scalera failed to meet his burden of showing that the violation of HRS § 803-9 affected his decision to refuse alcohol concentration testing.  See Edwards, 96 Hawai'i at 239, 30 P.3d at 253.  Thus, the district court did not err in denying Scalera's motion to suppress, and the ICA did not err in affirming the district court judgment.

Based on the foregoing, the ICA's Judgment on Appeal is affirmed for the reasons set forth in this opinion.

William H. Jameson, Jr.
for petitioner

James M. Anderson
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

